All right. Mr. Wickmer? Yes, your honor. Please proceed. Thank you. May it please the court. Hello again. My name is Timothy Wickmer. I represent the petitioner Wilfred Vasquez-Lopez. We ask the court to vacate the order of removal and the denial of asylum and withholding of remand the case to the board for consideration of asylum in the exercise of discretion. In the alternative, the board does have the ability to grant withholding of removal, which is a mandatory form of relief, and we would ask the court to consider that as well. The case is an affirmance without opinions, so the entire decision comes from the immigration judge. The immigration judge's decision was erroneous in three regards. Number one, he found that there that he strongly applied was past persecution, at least what happened to him, and the fear that he had in the future. He found no nexus between those and imputed political opinion. The second error was that he found that the government of Guatemala was not unable or unwilling to control, sorry, to protect the petitioner, and that he also erred in finding that the petitioner could relocate within Guatemala to escape persecution. Under the circumstances, I think it's all three of these factors weigh heavily in favor of a petitioner. Imputed political opinion is not only allowed for by long-standing case law. The Eighth Circuit has upheld this on numerous occasions, including the Brenner v. Ashcroft case, the the nexus is that the reason for persecution, the thing that you claim, this imputed political opinion, is one central reason for the persecution. To Brenner, Marroquin, and other cases have stood for the proposition that there can be other motives. It merely is necessary that the imputed political opinion be one central motive. What's the political opinion you assert was imputed? The imputed political opinion was an anti-gang stance because he cooperated and was a part of the police force in Guatemala. The gangs have been noted by this court and others to operate in a quasi-political realm, but it's not so much their activity. It's the imputation that my client was involved with the police force in Guatemala against the gang. That's what distinguishes it and separates it from the alien in the Marroquin case and even in the Gomez Rivera case, which the government heavily cites. Those are merely gang recruitment cases where a gang recruits anyone of a certain age or that can be useful to them. This is a situation where my client was an agent of the law enforcement of Guatemala in his area. Wasn't the connection really that Nijamayas, I guess is the fellow's name, was that it was really a personal beef more than any kind of ideological concern that motivated his actions against the government? It's not supported by substantial evidence in the record. If we start from the fact that, and I can explain that, if you start on page 163 of the record where he talks about the kind of injuries he suffered because it was such a brutal beating as to be, I would say, quasi-torturous and he has long-standing effects in the individual hearing itself, your honor, they stopped the record at least three times, I think maybe four times, to allow him to vomit. He has constant headaches, sensitivity to light, nausea, dizziness. Even at the end on the record, the immigration judge advised him to get medical treatment and talked to the then counsel about getting that. In this case, this isn't merely, as the government would have it, well, refusing to join a gang is an act and what Mr. Vasquez did was an act, so how do you differentiate them? This is an act of someone who's deputized by law enforcement to serve papers on this gang leader, known gang leader. He had to go back with the police because he didn't show up, so the gang leader's wife recognized him. The gang leader came by his house, identified this as the reason for why he was going to go get him. The gang leader surrounded him with 10 people and applied this brutal beating, citing the fact that he led the police to his house. The gang leader later, after he tried to move his wife to safety, threatened his wife and he also threatened his father to kill him because of what he did with the police. The petitioner was found to be credible. Credible testimony by itself can sustain a claim, matter of YB, that's a BIA case. This credible testimony talks about, I mean, it's very obvious what happened here. He cooperated with the police because it was his the gang member wanted to exact revenge. Even if there were a personal beef, as the IJ called it, in a mixed motive case, it's not even necessary. Motives of extortion or recruitment do not preclude additional grounds, that's Merrill Keenan DeBrenner, and then matter of SP in the BIA, aliens not required to show that it's solely the reason. Matter of VTS, proving the actual reason may be impossible and the applicant is not obligated to show conclusively why. This is a, what does the record show? And the record shows that it's what he did working with the police in Guatemala against this person that caused him to be persecuted. Everything that happened in this case, your honor, has happened within an 11-month period. It started in January of 2011. By the end of the year, he was out of the country. He had tried to move his wife to safety, unsuccessfully, and I think, which leads to this relocation error. Under the appropriate regulation, 8 CFR 208.13, the adjudicator must consider other factors, not just can he physically move, but, you know, would he face other serious harm? Is there any civil strife or administrative, economic, judicial infrastructure, and other things such as including health? This is an immigration judge who identified on the record that my client had a very serious health issue, and yet when he analyzed relocation, no mention of it was made at all, including any of these other factors. Just, oh, it seems like he can move. It's not just a physical or financial thing, can I move? But further evidence is that his wife did move and was still threatened by the same person, also the country reports, and I'll have to give you a general site because of time. In the record, 207 to 208, 285 to 286, 293 to 307, 246 to 276, it's all in there. When it comes to unable, and I know I'm into my rebuttal, but just to finish this part, on the unable or unwilling to control, we have to show that there's a complete helplessness. Yes, that's in the Guillen-Hernandez case, Menjivar, got it. He can show that because the statistics, again... Counsel, how do you show that when there was no effort? None of this was reported, there was no... The government wasn't given an opportunity to protect. He acted with the government, your honor, with all due respect, when he was working with the police better than anybody, whether the police could protect him. The police were there when they served the papers. It had to be known in a small village like that. Nothing was done, but even if you can say that it's a relevant inquiry that one should go to the police, it's only one relevant inquiry. What actually happened when the wife moved and what actually happened is documented in the country reports and the citations are in the brief and I'll have to leave it at that. This isn't just a mere allegation that the government can't do it. It's a well-known fact and the government offered no evidence of changed country conditions other than trying to frame the, you can move to another part of the country as changed country conditions, which is a separate inquiry. I'm happy to answer questions, but I'd like to reserve some time for rebuttal. Thank you, Mr. Winkler. Thank you. Mr. Ansinga. Good morning, your honors. May it please the court, Andrew Ansinga on behalf of the attorney general. Before the court, there are three independently dispositive findings by the immigration judge. The record does not compel reversal of any, let alone all three. Beginning with the unwilling or unable to control determination. The record here doesn't compel reversal here because as the judge points out, the civil fact, beginning with that under Molina, there's no direct evidence that the police were unable or unwilling to control because Petitioner didn't report this to police. An interesting fact, of course, is the entire point where this began was the police did want to arrest Nehemias. They did want to arrest this criminal. So we begin with the very fact that this starts with the police wanting to arrest a criminal. That was their goal. So Petitioner doesn't report it, which is up to him, but that means there's no direct evidence that the police were unable or willing to control. So Petitioner then relies on general country reports and says, well, clearly, of course. But then as this court has said in Galloso, that country reports are often too general. What we need is a specific evidence that the Guatemalan government would, were either condoning this, which there's no even allegation that they were condoning this, or were completely helpless to stop this particular criminal. What Petitioner wants essentially is some sort of blanket rule, just like, well, the Guatemalan police can't anyone. Except that's contrary to the complexity of the country reports that says the Guatemalan government is taking actions and is attempting. Now, of course, it is a complicated situation. But Petitioner essentially has one piece of evidence, general statistics. But again, what we know here is the police wanted to arrest this criminal. Turning to Nexus, the record doesn't compel reversal of that determination either. Any reasonable fact finder is not compelled to conclude that Nehemias was actually motivated by this now for the first time raised oral argument, an anti-gang opinion. What Petitioner should provide is sites to the administrative record that actually says would Petitioner actually testify to this. There's nothing to suggest that Nehemias was actually motivated by some unknown anti-gang opinion. This really goes back contrary to all the way back to the Supreme Court overturned the Ninth Circuit's assumption that guerrillas must be motivated to attack them because of some sort of political opinion. But we know that people can oppose, in that case, guerrillas for multiple reasons. Here, Petitioner may oppose for multiple reasons. Perhaps it was some actual imputed political opinion. We don't know. But Petitioner doesn't even put this individual criminal in the context of a real political sphere. Now, there's this allegation of narco states. But the problem is, that does not mean that even if we do have a true somehow narco state, every street thug does not inherently become a political actor simply because some members might want to be involved in politics. But then we don't have any evidence to compel a fact finder that Nehemias was actually motivated by an imputed political opinion. That is independently dispositive. Turning finally to internal relocation, the immigration judge gave Petitioner the benefit of the presumption and held DHS to the burden to show that Petitioner could both avoid internal relocation and to do so was reasonable. Now, to begin with, Petitioner for the very first time again, that argument has claimed, well, the immigration judge should have considered the health of Petitioner and was required to do so. When we look at Petitioner's brief filed to the agency, that's not raised. Such a claim is unexhausted. It was raised in the opening brief. The first time in oral argument, if Petitioner felt that health meant he can't or made it unreasonable for him to internally relocate, he should have raised that claim to the agency. Otherwise, the internal relocation analysis is straightforward. Petitioner feared one criminal in a rural area, San Antonio, to a city or a village, as Petitioner said, of 200 people, and there's nothing to suggest that this was somehow involved in broad or anything. Petitioner knew he was associated with gangs because he hung out with guys with tattoos. The record doesn't compel a reversal of the conclusion that Petitioner could internally relocate to avoid this one criminal. Therefore, before the court, there's three independently grounds. Petitioner has to show that the record compels reversal of each and every one of those in order to merit a grant of this petition, but the court should deny the petition. Unless you have any further questions, Your Honor? I don't see any. Thank you, Your Honor. Thank you, Mr. Ntsinga. Mr. Wickmer, for your rebuttal. Yes, Your Honor. With respect, two things are just not true. These are not oral arguments for the first time. The anti-gang opinion, the anti-narco perceived imputed resistance to the narco state in support of the current governmental structure, that's page 17 and 18 of my brief. It's not the first time we talked about relocation because the burden of proof, if you will, the judge has to make a finding and follow the regulation, and the regulation is cited in our brief. We talk about that very clearly. And I think, so the judge has a requirement to consider things like health. It's not it's not like a new idea that we came up with on appeal. The country reports in one case he cites are often too general, but they're not always too general. Country reports in this case, the administrative record 293 at the time period, unpunished homicides in Guatemala were between 95 to 97.2 percent. In 2011, there were 5,681 homicides, in Guatemala, and that was almost equal to the deaths from the 36-year civil war from 1960 to 96. Page 294, the president was quoted as saying that drug traffickers have us cornered, and that Zetas were preparing to take control of the country. 293 to 296, the United States High Commission for Refugees indicates that the state had lost territorial control to organize crime. The Zetas also controlled large parts of southern Guatemala, and there are all those other sources that I cite too. And of course, we do have the actual real life experience. I'm sorry, may I finish that thought? Finish your thought. Thank you. And we have the real life experience of the fact that when the wife and children relocated, they were threatened by the same person and they fled to the United States where they have an asylum claim pending. All right. Thank you, Mr. Wickman. Thank you. Court wishes to thank both counsel for the argument you provided to us today, and we'll take the case under advisement.